IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALETHEA L. MILLER, | : | 3:13-cv-0034 |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| CAROLYN COLVIN, | : | |
| Acting Commissioner of Social | : | |
| Security, | : | |
| Defendant. | : | |

## MEMORANDUM

## May 12, 2014

The above-captioned action is one seeking review of a decision of the Acting Commissioner of Social Security ("Commissioner") denying Plaintiff Alethea L. Miller's ("Plaintiff" or "Miller") claim for disability benefits under the Social Security Act.[1]  The administrative record has been submitted and the issues have been briefed by the parties.  (Docs. 13, 16, 19).  Accordingly, this matter is ripe for our review.  For the reasons that follow, we shall affirm in part the decision of the Commissioner and otherwise remand for further proceedings consistent with this Memorandum.

---

[1] Plaintiff's Complaint (Doc. 1) was filed on January 6, 2013 and named Michael Astrue as the Defendant in his capacity as Commissioner of Social Security.  Subsequently, on February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security.  Therefore, Ms. Colvin is substituted for Mr. Astrue as the Defendant in this suit.

I.      **STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. *See Poulos v. Commissioner of Social Security,* 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Commissioner of Social Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999); *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." *Id.; Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); *Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995); *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001); *Martin v. Sullivan,* 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of

evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)(quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 200 (3d Cir. 2008); *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. *Brown,* 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620 (1966). Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter,* 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason,* 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson,* 529 F.3d at 203; *Cotter,* 642 F.2d

at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979).

## II. DISCUSSION

### A. Sequential Evaluation Process Used by the Commissioner

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims. *See* 20 C.F.R. § 416.920; *Poulos,* 474 F.3d at 91-92. This

process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[2] (2) has an impairment that is severe or a combination of impairments that is severe,[3] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[4] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. *Id.* As part of step four the administrative law judge must determine the claimant's residual

---

[2]If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.910.

[3] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. *Id.* If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

[4]If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

functional capacity. *Id.*[5]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id*; 20 C.F.R. § 416.945; *Hartranft,* 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

### B. Plaintiff's Background and the ALJ's Decision

Plaintiff was born on May 28, 1986 and was 23 years old at the time of the alleged disability onset date, which is defined as a younger individual. 20 C.F.R. §§ 404.1563, 416.963. She has a high school education and has past relevant work as a fast food worker. Plaintiff filed an application for Supplemental Security Income benefits on April 30, 2010, alleging that she is unable to work due to panic attacks, anxiety disorder, borderline personality disorder, major depressive

---

[5] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

disorder, anemia, and hypertension. Following a hearing, Administrative Law Judge ("ALJ") Edward L. Brady determined that the Plaintiff was not disabled within the meaning of the Social Security Act and therefore not entitled to Supplemental Security Income benefits. We shall now summarize the ALJ's findings and decision.

At step one of the sequential evaluation process, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since April 30, 2010, the date of the Plaintiff's application. (ALJ Brady's Decision, dated November 21, 2011 (hereinafter "Brady Decision"), p. 3). At step two of the evaluation process, ALJ Brady concluded that Miller has the following severe impairments: panic attacks, anxiety disorder, borderline personality disorder, major depressive disorder, anemia, and hypertension. (Brady Decision, p. 3). At step three of the process, ALJ Brady found that the Plaintiff's impairments did not or in combination meet or equal a listed impairment. (Brady Decision, p. 3).

At step four of the sequential process, ALJ Brady determined that Miller has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she is "limited to simple and routine jobs described as unskilled with no more than an SVP of 2 involving no interaction with the public and only occasional contact with co-workers and supervisors." (Brady

Decision, p. 4-5). In setting Miller's RFC, ALJ Brady undertook a detailed review of Millers's medical file and Miller's own testimony.

Finally, at step five of the process, the ALJ determined that Miller was unable to perform any past relevant work. 20 C.F.R. § 416.965. However, ALJ Brady determined that, considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Miller can perform. 20 C.F.R. §§ 416.969 and 416.969(a). The vocational expert opined that Miller could perform jobs such as cleaner, small products assembler, and inspector. (Brady Decision, p. 9). ALJ Brady concluded that Miller has not been disabled, as that term is defined in the Social Security Act, since April 30, 2010, the date her application was filed. (Brady Decision, p. 10).

**C.     Analysis**

Plaintiff raises four issues in the instant appeal. First, she asserts that the ALJ's acceptance of the opinion of consultive examiner Dr. Stephen Timchack[6] directs a finding of disability. Second, the Plaintiff argues that the hypothetical question posed to the vocational expert did not identify all of Plaintiff's impairments and limitations as indicated by the record. Third, the Plaintiff argues

---

[6] Medical records (Exhibit 6F) indicate this to be the correct spelling of Dr. Timchack's name, despite ALJ Brady's Decision referring to him as "Dr. Timchak" and Plaintiff's first brief referring to him as "Dr. Timchuck." Defendant's brief and Plaintiff's reply brief properly refer to him as "Dr. Timchack."

that the ALJ failed to make a credibility determination regarding the written statements of Plaintiff's boyfriend. Finally, the Plaintiff contends that the ALJ erroneously rejected her credible testimony and relied on mischaracterizations of the testimony and mistakes of fact and law.

### 1. Significance of Dr. Timchack's Opinion

Plaintiff's first argument is that ALJ Brady's acceptance of Dr. Timchack's opinion mandates a finding of disability. ALJ Brady's Decision contains a review of Dr. Timchack's findings and a summary of his ultimate diagnosis:

> Dr. Timchak [sic] diagnosed the claimant with panic disorder with agoraphobia and cluster B personality traits. He assessed her with a GAF of 50 and noted that she had marked limitations making simple work-related decisions (Exhibit 6F). A GAF score of 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning (DSM-IV).

Plaintiff claims that, although ALJ Brady claims in his Decision to have given Dr. Timchak's opinion "great weight", his conclusion was in error because he overlooked and did not consider Dr. Timchack's diagnosis of a Global Assessment of Function (GAF) score of 50. Plaintiff argues that such a score is inconsistent with an ability to perform competitive employment because a GAF range of 41-50 is considered by the American Psychiatric Association Guidelines to indicate serious symptoms or limitations.

Although Plaintiff's argument appears reasonable at first blush, in context it

9

is evident that the ALJ did not fail to consider Dr. Timchack's opinion, but rather considered the entire range of GAF scores assigned to the Plaintiff by various physicians and counselors. The ALJ's Decision notes that when Plaintiff sought treatment at Behavioral Health Services in April 2010, "the examiner diagnosed the claimant with a panic disorder without agoraphobia, major depressive disorder, and anemia and assessed her with a Global Assessment of Function (GAF) score of 60 (Exhibit 5F). A score of 60 indicates moderate symptoms or any moderate difficulty in social, occupational, or school functioning (DSM-IV)." (Brady Decision, p. 5). The Decision notes Dr. Timchack's assessment of a GAF score of 50 in August 2010. The Decision also describes Plaintiff's treatment at Valley Counseling in September 2010, when she was assigned a GAF score of 58. (Brady Decision, p. 5). The ALJ also gave "great weight" to the State Agency mental residual functional capacity evaluation (Exhibit 8F) prepared by Dr. Joseph Barrett, who himself considered Dr. Timchack's report, gave it "appropriate weight," and came to the "partially consistent" conclusion that Plaintiff's limitations "do not preclude [her] from meeting the basic mental demands of competitive work on s sustained basis." (Exhibit 8F, p. 3). Thus, we do not agree with the Plaintiff that the ALJ rejected or overlooked the opinion of Dr. Timchack. The record shows that Dr. Timchack's opinion was considered and given reasonable weight by the ALJ in

consideration of the Plaintiff's medical file as a whole and that substantial evidence supports the ALJ's determination.

### 2. Sufficiency of the Hypothetical Scenario

Plaintiff 's second argument is that the ALJ's hypothetical to the vocational expert did not identify all of Plaintiff's limitations and impairments.  Specifically, Plaintiff contends that the hypothetical posed to the vocational expert by ALJ Brady failed to fully encompass her limitations because it made no reference to "'moderate' limitations in concentration, persistence, or pace." (Doc. 13 at 12).

In order for a vocational expert's answer to a hypothetical to be considered substantial evidence, the question must reflect "*all* of the claimant's impairments that are supported by the record." *Allen v. Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) (emphasis in original).  Courts within the Third Circuit have repeatedly held that an ALJ's failure to include moderate limitations involving concentration, persistence, or pace in the hypothetical posed to the vocational expert constitutes error warranting remand. *See Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) ("a requirement that a job be limited to one to two step tasks, as was stated in the hypothetical relied upon by the ALJ, does not adequately encompass a finding that [Plaintiff] often has deficiencies in concentration, persistence, or pace, as was noted by the ALJ ..."); *see also Corona v. Barnhart*, 431 F.Supp.2d 506, 516

(E.D.Pa. 2006) ("the ALJ's determination that Plaintiff suffers mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration is not properly reflected in her hypothetical question to the VE."); *Thompson v. Barnhart*, 2006 WL 709795, at *14-15 (E.D.Pa. March 15, 2006); *Barry v. Barnhart*, 2006 WL 2818433, at *10 (E.D.Pa. Sep.28, 2006) ("the record as a whole demonstrates that [the plaintiff] suffered from at least moderate limitations in maintaining concentration, persistence, or pace, and that limitation should have been included in the hypothetical question."); *Colon v. Barnhart*, 424 F.Supp.2d 805, 814 (E.D.Pa. 2006) ("When an ALJ incorporates a claimant's limitations into a hypothetical, 'great specificity' is required.").

Here, the ALJ found that the claimant had moderate difficulties in social function, that "[w]ith regard to concentration, persistence, or pace, the claimant has moderate difficulties," and that the "claimant has mental impairments which by their nature are likely to interfere with an individual's ability to concentrate." (Brady Decision, p. 4). The hypothetical scenario posed to the vocational expert incorporated a limited social function, as the hypothetical individual was "limited to jobs which has no interaction with the public and only occasional interaction with coworkers and supervisors." (Hearing Transcript, p. 21). Although the scenario

presented to the vocational expert did limit the hypothetical individual to "simple and routine" jobs, defined as "unskilled with no more than an SVP:2," it failed to include deficiencies in concentration, persistence, or pace. (Hearing Transcript, p. 21). The ALJ found as a factual matter that Miller suffers moderate difficulties with concentration, persistence, or pace, but failed to address that limitation in the hypothetical scenario presented to the vocational expert. Thus, the ALJ erred by neglecting to include all of Plaintiff's limitations that were supported by the record. Accordingly, the matter will be remanded for further proceedings consistent with this Memorandum.

### 3. Credibility of Plaintiff's Boyfriend

Plaintiff's third argument is that the ALJ ignored a written statement completed by Plaintiff's boyfriend, Lydell Hall, regarding Plaintiff's functional abilities and limitations. (Doc. 8, Ex. 3E). The Function Report Adult (Third Party) form completed by Mr. Hall largely echoes Plaintiff's own testimony, explaining that she can perform rudimentary chores and activities around the house, including caring for her daughter, but that she has difficulty concentrating for more than half an hour at a time. Mr. Hall also states that Plaintiff only leaves her home 2-3 times per week and cannot go outside alone because she may faint or suffer a panic attack. For this reason, Mr. Hall also states that Plaintiff does not drive or

even own a car.  Plaintiff claims that the ALJ's failure to make a determination of the credibility of Mr. Hall's written statement was in error, particularly because the ALJ rejected Plaintiff's credibility but did not consider her boyfriend's corroborative statements.  Defendant argues that, although the ALJ did not mention Mr. Hall's statements in his Decision, those statements would not have been entitled to great weight because of his close relationship to the Plaintiff.  Additionally, Defendant argues that Mr. Hall's testimony is not probative evidence because it is so similar to Plaintiff's testimony, which was explicitly considered by the ALJ, and does not directly conflict with the ALJ's finding.

As with medical reports, the ALJ must consider and weigh all of the non-medical evidence before him, including written and oral testimony.  *See Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).  "Although allegations of subjective symptoms must be consistent with objective medical evidence, *see Hartranft*, 181 F.3d at 362 (citing 20 C.F.R. § 404.1529), the ALJ must still explain why he is rejecting the testimony."  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000) (citing *Van Horn*, 717 F.2d at 873).  Although Defendant contends that the ALJ need not mention Mr. Hall's testimony because it merely corroborates Plaintiff's testimony, this argument lacks merit.  The ALJ made a credibility determination regarding Plaintiff's testimony, and the testimony of a corroborating

witness meant to bolster the Plaintiff's credibility must be addressed.  *See Burnett*, 220 F.3d at 122.  Of course, the ALJ may give that testimony very little or no weight if he proffers a legitimate reason for doing so, but on remand the ALJ must address the testimony of Lydell Hall.

### 4. Rejection of Plaintiff's Testimony

With regard to Plaintiff's testimony, ALJ Brady determined that "[a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[7] (Brady Decision, p. 7-8).  Plaintiff argues that her credible testimony was therefore rejected and that the ALJ instead relied on mischaracterizations of the testimony and mistakes of fact and law in reaching his conclusion that she is not disabled.  Plaintiff believes that the ALJ erred in two ways: (1) by citing Plaintiff's ability to perform routine daily activities as a means of minimizing the impact of her impairment and (2) by criticizing Plaintiff's credibility because she failed to

---

[7] ALJ Brady found the claimant to have a "residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to simple and routine jobs described as unskilled with no more than an SVP of 2 involving no interaction with the public and only occasional contact with co-workers and supervisors."  (Brady Decision, p. 4-5).

15

consistently pursue and comply with mental health treatment.

Although Plaintiff objects to the ALJ's consideration of claimant's daily activities, Defendant correctly points out that the ALJ is *required* to consider them. 20 C.F.R 416.920a(c)(3) ("We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."). In Plaintiff's reply brief, she responds that she "has not argued that an adjudicator isn't permitted to consider an individual's activities of daily living in reaching a conclusion about her credibility. Rather Plaintiff argues that the manner in which the ALJ considered Plaintiff's daily activities was not supportive of his finding rejecting Plaintiff's credibility." (Doc. 19 at 4). Plaintiff states that "the ability to do sporadic and intermittent activities such as caring for one's children, cannot be used to show an ability to engage in substantial gainful activity." (Doc. 19 at 4). Although Plaintiff is correct that "sporadic and transitory" activities cannot be used to "show an ability to engage in substantial gainful activity," *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001), the activities cited by the ALJ do not fit that description. In *Fargnoli*, the "sporadic and transitory" activity at issue was a single trip to Europe in 1988. Examples of "sporadic and transitory" activity in other Third Circuit cases include a single

instance of out-of-state travel two years prior to the hearing, *see Jesurum v. Sec. of U.S. Dept. of Health & Human Services*, 48 F.3d 114, 119 (3d Cir. 1995), and two hunting trips the fall before the hearing, *see Wright v. Sullivan*, 900 F.3d 675, 682 (3d Cir. 1990). The record reflects substantial evidence that Plaintiff cared for her children on much more than a "sporadic and transitory" basis. Plaintiff has custody of two of her children and sees her other children nearly daily. Plaintiff's daily activities related to caring for her children, as well as her other daily or near-daily activities, are relevant "activities of daily living" that must be considered by the ALJ. Thus, his consideration of those activities in his Decision was appropriate.

With regard to Plaintiff's pursuit of mental health treatment, ALJ Brady noted that Plaintiff "only sees a therapist or doctor for a few occasions and then she quits treatment," that Plaintiff "did not like how Zoloft made her feel, so she stopped taking all medications without trying another less sedating medication," and that Plaintiff relies solely on pastoral counseling despite "no evidence that the pastor is a qualified medical professional who can adequately treat the claimant's impairment." (Brady Decision, p. 8). Taking these facts together, the ALJ found that "[t]he claimant has not sought appropriate medical treatment nor complied with appropriate medical [treatment] long enough to conclude that she is disabled by her impairment." (Brady Decision, p. 8). Although Plaintiff questions the ALJ's

consideration of her treatment history in assessing the credibility of her testimony, that history is a relevant factor to be considered in evaluating a claimant's credibility. *See* S.S.R. 96-7p, 61 F.R. 34483, 34487. Although an ALJ must consider whether the claimant has good reasons for not pursuing treatment, an adjudicator may deem testimony to be less credible if the level or frequency of treatment sought is inconsistent with the level of complaints. *See id*. If a claimant alleges that a symptom is disabling but does not appear interested in seeking treatment for that symptom, it is reasonable and appropriate for an ALJ to consider whether the claimant's testimony about the seriousness of that symptom is credible. The ALJ's determination on this point is supported by substantial evidence and was therefore not in error.

### III. CONCLUSION

Our review of the administrative record reveals that the ALJ erred in failing to include in his hypothetical to the vocational expert the Plaintiff's limitation with regard to concentration, persistence, or pace. We also find that the ALJ erred in failing to address the written statement of Lydell Hall. Accordingly, the matter will be remanded for further proceedings consistent with this Memorandum. An appropriate Order will follow.